IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-02744-RBJ

JOYCE WAHLERT,

      Plaintiff,

v.

AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, a member of The
American Family Insurance Group d/b/a American Family Insurance

      Defendants.

---

## ORDER

---

      This is an insurance coverage case.  Pending before the Court is defendant American

Standard Insurance Company of Wisconsin's motion for a partial summary judgment dismissing

plaintiff's common law and statutory bad faith claims.  For the reasons discussed in this order,

the motion is granted as to the common law claim but denied, in part, as to the statutory claim.

## BACKGROUND

      Joyce Wahlert was injured in an automobile accident on May 17, 2011.  The accident was

caused by one Zachary Brunette who negligently collided with a car in which Ms. Wahlert was a

passenger.  On April 3, 2012 Ms. Wahlert through counsel sent a letter to Brunette's liability

insurer, GEICO, claiming $14,708.15 in medical expenses; between $5,000 and $15,000 in

future medical expenses; $100,000 in non-economic loss; and $100,000 in physical impairment.

ECF No. 35-2 at 6-7.  Despite the total of $226,164.15 to $236,164.15 in claimed damages,

1

counsel stated that he was authorized to settle for $135,000. *Id.* GEICO's policy limit was $25,000, which GEICO paid.

On June 13, 2014 Ms. Wahlert, through counsel, sent the demand letter it had served on GEICO and other materials to American Standard, the liability insurer for the driver of the car in which Ms. Wahlert was a passenger. In addition to up to $400,000 of underinsurance motorist coverage for the driver, the policy provided up to $100,000 in such coverage to the passenger. Ms. Wahlert's counsel demanded that American Standard pay the $100,000 limits to her.

American Standard requested and received copies of Ms. Wahlert's medical records for the five years prior to the accident and her wage loss records. American Standard's evaluation of the records was that Ms. Wahlert had suffered rib contusions and neck, arm and wrist pain. She had attended several physical therapy sessions but had discontinued those and obtained an evaluation from a hand specialist concerning the arm and wrist pain. As a result she underwent a carpal tunnel release which apparently was effective in reducing her arm and wrist pain. She did not return to physical therapy or seek further treatment concerning neck pain.

On by September 20, 2012 American Family's adjuster, Christina Osborn, evaluated the claim as follows:

| | |
|---|---|
| Medical expenses | $13,300 |
| Wage loss | 4,566 |
| <less medical expenses paid | …5,000> |
| Non-economic damages | $15,000-$20,000 |
| TOTAL | $27,866-$32,866 |

Accordingly, after deducting the $25,000 paid to Ms. Wahlert by GEICO, these numbers resulted in a valuation range of $2,866 to $7,866. Ms. Osborn assigned a "final value" of $7,866

to the claim. ECF No. 35-1 at 46. She made an offer of settlement to Ms. Wahlert of $2,866 on October 23, 2012. *Id.* at 44.

The offer was not accepted. On December 6, 2012 Ms. Wahlert's counsel provided records indicating that in August 2012 Ms. Wahlert had complained of left leg and knee pain beginning in June 2012 and had been diagnosed with osteoarthritis: a total knee arthroplasty (replacement) had been recommended. *Id.* at 42. In light of this new information Ms. Osborn requested that American Standard's Medical Services Department set up a review of Ms. Wahlert's medical records by an independent doctor. American Standard contacted a vendor, Corvel, which selected an orthopedic surgeon, John Douthit, M.D. to review the records. Dr. Douthit provided a report on March 20, 2013. Among other things he concluded that the leg and knee issues were unrelated to the auto accident.

In April 2013 Ms. Wahlert's claim was reassigned to another American Standard adjuster, Dennis Feliciano, who conducted his own evaluation. The key points in his evaluation were:

- Ms. Wahlert's injuries from the accident were cervical strain, rib contusion, chest contusion, carpal tunnel syndrome (right hand), limited range of motion, and radiating pain (right arm & hand numbness).

- X-rays of Ms. Wahlert's ribs, chest and cervical spine taken in the Emergency Room where she was taken following the accident were normal (no fractures).

- After three doctor visits and 16 physical therapy visits the right hand and arm pain was not resolved. However, on September 30, 2011 a neurologist diagnosed carpal tunnel syndrome of the right wrist, and her symptoms resolved after a carpal tunnel

release was performed on October 21, 2011. Because prior medical records did not reveal any symptoms regarding her right hand or arm, Dr. Douthit concluded that the right wrist injury was attributable to the accident.

- Ms. Wahlert had a prior worker's compensation claim for a back injury resulting from a fall off a ladder on October 7, 2010. This resulted in a 22% permanency rating. Treatment for back injury continued to November 3, 2011, i.e., for several months after the motor vehicle accident. The back issues did not appear to relate to the motor vehicle accident.

- Ms. Wahlert reported leg pain during a doctor visit on August 14, 2012 and was diagnosed with osteoarthritis of both knees. She had made no mention of pain in her lower extremities prior to that time. The leg and knee issues did not appear to be accident related. [1]

- Ms. Wahlert's counsel had provided verification of one and one-half weeks of missed work due to injuries sustained in the accident.

ECF No. 35-1 at 34.

Mr. Feliciano's evaluation of Ms. Wahlert's claim was $15,901.65 for medical expenses (with an indication that the only medical bills submitted were for neck pain, rib/chest contusions, and right arm/hand/wrist issues), $1,656.00 wage loss, and $12,000 to $15,000 "general damages," for a total of $29,557.65 to $32,557.65. He deducted the $5,000 medical expenses

---

[1] It is not clear from Mr. Feliciano's records whether the determination that the back, leg and knew issues did not appear to be related to the motor vehicle accident was made by Dr. Douthit or by Mr. Feliciano. *See* ECF No. 35-1 at 34. He was brought into the matter because of plaintiff's December 2012 information about leg and knee problems, so presumably he reported on those. The note indicates that he looked at the arm and wrist issues and determined that they were accident-related. It is hard to say what, if anything, he said about back issues. The Douthit report is not in the record so far as I could determine.

previously paid by American Standard and the $25,000 paid by GEICO, leaving a difference between an overpayment of $442.35 and an additional amount owed of $2,557.65. *Id.* He requested and obtained $2,600 in settlement authority. *Id.* at 31, 34. He extended a settlement offer to Ms. Wahlert's counsel of $1,000 on May 13, 2013 and re-extended the same offer on June 13, 2013; July 17, 2013; and August 4, 2013. *Id.* at 29-30.

On August 21, 2013 Ms. Wahlert's counsel apparently expressed concerns about the offers. Mr. Feliciano noted that the consultative review (on which his evaluation was based) was by a peer of Ms. Wahlert's treating providers, not an American Standard nurse, but indicated that he would review and respond. *Id.* at 27. On November 14, 2013 Mr. Feliciano noted internally that American Standard's current reserve on the Wahlert claim was $8,000. *Id.* at 21. Meanwhile, the records indicate that Ms. Wahlert's counsel, who also represented the driver in her underinsured claim, continued to dispute American Standard's evaluation of the claims of both women. *Id.* at 18-20.

On (or before, it's not entirely clear) January 15, 2014 Mr. Feliciano increased his settlement offer to $2,866 (the amount that Ms. Osborn had previously offered). *Id.* at 16-17. After receiving an inquiry from Ms. Wahlert's counsel as to whether that was the full value of American Family's evaluation, Mr. Feliciano responded that American Family was maintaining its $2,866 offer but would entertain a counter demand. *Id.* at 5. On May 6, 2014 Ms. Wahlert's counsel communicated a $75,000 demand. *Id.* at 3. On May 7, 2014 Mr. Feliciano extended "our top offer of $8,000." *Id.* On May 14, 2014 counsel advised that Ms. Wahlert had resumed treatment, and he asked American Standard to arbitrate the claim and agree to toll the statute of

limitations. *Id.* at 2. Mr. Feliciano declined to arbitrate or to toll the statute of limitations and reiterated the offer of $8,000. *Id.*

The present suit was filed on behalf of Ms. Wahlert in the Boulder District Court on May 16, 2014. American Standard was served on September 16, 2014 and was removed to this Court on October 7, 2014. ECF No. 1 at 1.

## STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the nonmoving party. *Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party faces the initial burden of demonstrating the absence of genuine issues of material fact. *Celotex,* 477 U.S. at 323 (1986). The nonmoving party then must "go beyond the pleadings" and designate evidence of specific facts showing that there is a genuine issue for trial. *Id.* at 324.

## ANALYSIS

### A.  <u>Insurance Bad Faith in Colorado</u>.

Plaintiff asserts two bad faith claims: bad faith breach of insurance contract, a common law tort under Colorado law (Second Claim), and unreasonable delay or denial of an insurance benefit, a statutory penalty established at C.R.S. §§ 10-3-1115 and -1116 (Third Claim).  The common law claim requires proof not only that insurer's conduct was unreasonable but also that the insurer knew or recklessly disregarded the fact that its conduct was unreasonable.  *Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1272 (Colo. 1985).  The statutory claim requires proof that a benefit to which the insured was entitled under the policy was unreasonably delayed or denied. If that is established, the plaintiff is entitled to receive a penalty payment of two times the benefit (in addition to the benefit itself) plus reasonable attorney's fees and costs.  C.R.S. § 10-3-1116(1).

Because of the lesser liability burden and the onerous penalty provision, the statutory claim is "'arguably . . . more financially threatening'" to the insurer.  *Vaccaro v. American Family Ins. Group,* 275 P.3d 750, 756 (Colo. App. 2012) (citing Erin Robson Kristofco, *CRS §§ 10–3–1115 and –1116: Providing Remedies to First–Party Claimants,* 39 Colo. Law. 69, 70 (July 2010).  Nevertheless plaintiffs frequently assert both claims.  Perhaps the motivator for including the common claim is that punitive damages can be recovered if the plaintiff establishes that the insurer's actions were accompanied by circumstances of fraud, malice, or willful and wanton conduct.  *Goodson v. American Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 415 (Colo. 2004).

B. **Common Law Bad Faith.**

As discussed below, for the most part I find that plaintiff has failed to come forward with evidence that creates a triable issue as to whether American Standard's evaluation of plaintiff's claim was unreasonable. To the extent that I find that there is a genuine dispute, it concerns the reasonableness of American Standard's delay in offering to pay, and ultimately its failure to pay, the amount for which it internally valued the claim. But plaintiff has come forward with no evidence that suggests that American Standard knew or recklessly disregarded the (alleged) fact that its evaluation was unreasonable, nor certainly that its evaluation was accompanied by circumstances of fraud, malice, or willful and wanton conduct. Accordingly, I conclude that the common law bad faith claim must be dismissed.

C. **Unreasonable Delay or Denial of a Benefit of the Policy.**

Under Colorado appellate case law, "[a]n insurer is under no obligation to negotiate a settlement when there is a genuine disagreement as to the amount of compensable damages payable under the terms of an insurance policy." *Vaccaro,* 275 P.3d at 759. Plaintiff contends that American Standard's invocation of the value dispute "defense" in this case was itself unreasonable. Assertion of this defense can be overdone, just as assertion of bad faith claims can be overdone. But it always boils down to the facts and to the standard for granting or denying summary judgment. "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Id.* citing *Zolman v. Pinnacol Assur.,* 261 P.3d 490, 496 (Colo. App. 2011). I conclude that, for the most part, this is such a case.

I have set forth above, in detail, what I find to be the key items in the chronology of American Standard's evaluation of Ms. Wahlert's claim.  I find that American Standard has come forward with evidence that, except as noted later in this order, tends to support its position that its evaluation of the claim on the facts presented to it was reasonable.  So, I turn to the task of determining whether plaintiff has come forward with evidence that create a genuine issue of material fact concerning American Standard's reasonableness.

I begin where the plaintiff began – the demand letter first served on GEICO, later re-served on American Standard, and again referenced in the plaintiff's response brief.  ECF No. 35-2 at 2-7.  The letter listed nine injuries allegedly sustained by Ms. Wahlert in the motor vehicle accident: chest wall contusion; cervical strain/pain; cervical facet syndrome; radiculopathy, right arm; numbness and tingling, right upper extremity; brachial plexus lesions/neuritis; closed fracture, nasal bones; leg and knee contusions; and sleep disruption.  *Id.* at 3.  The records establish that all medical bills concerning neck pain, rib and chest contusions, and right arm, hand and wrist issues were accepted and included in American Standard's evaluation of the claim.  Notably, plaintiff has come forward with no evidence that American Standard's determination of the amount owed for her medical expenses for treatment of her chest, arm, wrist, neck or nose injuries was unreasonable.

Plaintiff did, in December 2012, submit additional information concerning injuries to Ms. Wahlert's knee and leg.  In response, American Standard engaged an orthopedic surgeon, Dr. Douthit, to review plaintiff's records.  Dr. Douthit's interpretation of her records, including pre-accident records, was that the knee and leg problems resulted from osteoarthritis unrelated to the accident.  ECF No. 35-1 at 34.  Of course, his opinion could be wrong.  But plaintiff has come

forward with no evidence suggesting that Dr. Douthit was not a qualified orthopedic expert, or that his evaluation was not performed in good faith, or that American Standard's adjuster unreasonably relied on his opinions.  Plaintiff's counsel simply asserts that Dr. Douthit is not independent, implying that his opinion was biased in American Standard's favor.  Counsel's assertion of bias does not make it so, nor is it evidence. [2]  In short, I find that there is no genuine issue of material fact concerning whether American Standard reasonably relied on the opinion of Dr. Douthit that the leg and knee issues were unrelated to the accident.

Plaintiff's pre-accident records also revealed that Ms. Wahlert had an L1 spinal compression fracture that was the subject of a workers' compensation claim in 2010, resulted in her being given a 22% disability rating, and that she was still treating for that injury when the motor vehicle accident occurred.  *Id.*  It could be that the accident exacerbated her back problems or created new ones, but there is no evidence of that in the record.  I find that plaintiff has not come forward with any evidence showing that there is a genuine issue of material fact concerning the reasonableness of American Standard's conclusion that the back issues were not related to the accident.  Nor, for that matter, is there a genuine issue of material fact concerning the reasonableness of American Standard's response to any issues concerning Ms. Wahlert's claim of sleep disruption.  There is essentially no mention of that issue after the initial demand letter.

---

[2] In the response brief plaintiff asserts that American Standard hid the Douthit report from plaintiff's counsel for six months.  ECF No. 38 at 10.  There is no evidence that American Standard hid the report (nor would it have any reason to).  The record simply indicates that on December 12, 2013 plaintiff attorney Balach wrote that he had not received the Douthit report, and that on the same day Mr. Feliciano apparently sent a copy to him.  ECF No. 35-1 at 18.

Plaintiff's primary complaints, repeated several times, are that American Standard unreasonably failed to evaluate whether Ms. Wahlert sustained physical impairment or disfigurement, and that its evaluation unreasonably did not include any amount of interest.[3]  I disagree.

Colorado does consider physical impairment and disfigurement to constitute a category of permanent injury for which damages may be awarded separate and apart from other non-economic injuries.  *See, e.g., Pingle v. Valdez,* 171 P.3d 624, 631 (Colo. 2007).  I go back again to counsel's demand letter.  It asserts, "Joyce is entitled to a separate award . . . for permanent physical impairment."  ECF No. 35-2 at 5.  It demands the round number, $100,000, for physical impairment.  *Id.* at 7.  However, the demand letter provided no evidence that Ms. Wahlert had in fact sustained physical impairment or disfigurement damages, much less that the figure $100,000 had any basis in reality.  Nor did I find that plaintiff submitted any evidence of physical impairment or disfigurement to Ms. Osborn or to Mr. Feliciano or to anyone else at American Standard during the time when American Standard was evaluating the claim.  More to the point, plaintiff has come forward with no evidence that raises a genuine issue of material fact as to whether American Family's failure to include some amount for physical impairment or disfigurement in either of the evaluations of the claim was unreasonable.

---

[3] Plaintiff also argues that American Standard's evaluations unreasonably did not include an amount to compensate Ms. Wahlert for loss of earning capacity.  I did not find evidence in the record that created a genuine dispute of fact concerning whether the injuries sustained in the motor vehicle accident prevented her return to work.  Moreover, it appears that counsel might have been misinformed when he wrote in his demand letter that Ms. Wahlert "intends to work as long as she possibly can, and has no intention of retiring soon."  ECF No. 35-2 at 5.  She has retired, and she explained in her deposition that she did so because she had worked for 55 years and thought it was time to enjoy her family and friends.  ECF No. 42-1 at 2-3.

Plaintiff does cite a portion of Mr. Feliciano's deposition in which he acknowledges that an insured does not have to have an impairment rating in order for American Standard to evaluate physical impairment.  ECF No. 39-11 at 93.  However, immediately thereafter Mr. Feliciano testified that he "would want to see something from a medical provider to take into consideration physical impairment."  *Id.*  There is nothing from any medical provider on physical impairment in the record of this case.

Plaintiff argues that it was unreasonable for American Standard to have omitted an amount for physical impairment or disfigurement without first asking Ms. Wahlert whether she suffered any injury that fit those categories.  On the present facts, at least, I do not agree.  If a plaintiff submits nothing more than counsel's bald assertion that there has been physical impairment or disfigurement, accompanied by a $100,000 demand, the plaintiff has not met its minimal burden of going forward by providing some evidence that she has sustained such injuries.

When Ms. Wahlert's deposition was taken during the course of this litigation, she indicated that she has continued to experience a burning or tingling sensation in her neck, and that she has some difficulty with sweeping with a broom, raking and lifting.  ECF No. 39-15 at 85-86, 109-111, 123-128.  If counsel had submitted any evidence of these things and their relation to the accident while American Standard was evaluating the claim, even an affidavit from Ms. Wahlert, and American Standard ignored it, then I would have found that there is a genuine dispute of material fact concerning the reasonableness of the omission of that category of damage in the evaluation of the claim.  However, while the "the duty of good faith and fair dealing continues unabated during the life of the insurer-insured relationship, including through a

12

lawsuit or arbitration between the insured and the insurer, . . . the adversarial nature of such proceedings may suspend the insurer's obligation to negotiate as a reflection of good faith." *Sanderson v. American Family Mutual Ins. Co.,* 251 P.3d 1213, 1217 (Colo. App. 2010). *Cf. Bucholtz v. Safeco Ins. Co. of America,* 773 P.2d 590, 593 (Colo. App. 1988) (where the only disagreement was the amount of payment owing under the terms of the policy, the obligation to negotiate was suspended upon a demand for arbitration since this was the very issue the arbitration clause was intended to resolve).[4]  Here, I conclude that the introduction of evidence supportive of physical impairment for the first time during the litigation was not sufficient to create a genuine dispute of material fact as the reasonableness of American Standard's omission of this category during its pre-litigation evaluation of the claim.

I note that the foregoing observations do not mean that American Standard's evaluation of the losses attributable to the accident was necessarily correct.  That is why we need a trial of the breach of contract claim.  Plaintiff is not precluded from presenting evidence of physical impairment or disfigurement, and if the jury finds that there was a breach of contract, and that the accident caused physical impairment or disfigurement, it can award appropriate compensation.

American Standard's failure to include an interest component in its evaluation is a closer call.  Under Colorado law, in actions to recover damages for personal injuries resulting from negligence, the plaintiff may recover pre-judgment interest at the rate of nine percent per annum on her

---

[4] American Standard's first evaluation (Osborn) did include $15,000 to $20,000 for "pain and suffering." The second evaluation (Feliciano) included $12,000 to $15,000 for "general damages."  Those numbers appear to address "non-economic" damages, which are inherently part of the evaluation of any personal injury claim.  However, there may or may not be physical impairment or disfigurement in a given case, perhaps explaining why it is treated as a separate category.

damages. C.R.S. § 13-21-101.[5] The court must add this pre-judgment interest to the amount of damages assessed by the verdict of the jury. Colorado's uninsured motorist statute requires underinsured motorist policies to include coverage for all "damages" an insured is legally entitled to recover against the tortfeasor in excess of the motorist's liability coverage, up to the insured's underinsured motorist policy's limits. C.R.S. § 10-4-609 (1). In *USAA v. Parker,* 200 P.3d 350 (Colo. 2009) the Court, recognizing that prejudgment interest is an element of damages, held that the underinsured motorist insurer is liable for the pre-judgment interest that the plaintiff would have been awarded against the tortfeasor. *Id.* at 353.

One could argue that American Standard should have added pre-judgment interest at nine percent per annum to its evaluation and, therefore, to its proposals for resolution of the claim. However, at least on the facts of this case, I hold that American Standard's failure to do so cannot support a penalty payment for an unreasonable delay or denial of a claim. In the first place, I am aware of no Colorado case to date that has held that an uninsured motorist insurer must include a pre-judgment interest component in its pre-litigation evaluation of a claim. After all, "pre-judgment" implies that there is a judgment. Second, plaintiff simply complained that there should be an interest component but, so far as the record discloses, provided no explanation or calculation. I leave it to future cases to determine whether, now that the possible application of the pre-judgment interest statute to a pre-litigation effort to settle an insurance claim has been raised, it might be an unreasonable delay or denial of a benefit not to include an interest component in the evaluation of the claim.

---

[5] The calculation includes compounding from the date suit was filed.

Notwithstanding the foregoing, however, I find that there is evidence in the record from which a jury could find that American Family unreasonably delayed or denied a benefit of the policy in two related respects. The first concerns the delay in extending an offer to settle for what American Standard itself believed the claim to be worth. In Ms. Osborn's evaluation of the claim on September 20, 2012 she placed a "final value" of $7,866 on the claim. ECF No. 35-1 at 46. She obtained authority to settle up to $8,000, and the reserve was adjusted accordingly. *Id.* at 45. She offered to settle the claim for $2,866 on October 23, 2012. *Id.* at 44. Plaintiff did not accept the offer, but her counsel did send additional records concerning leg and knee pain. This led to the records review by Dr. Douthit.

Mr. Feliciano then replaced Ms. Osborn as the adjuster on the file, and his evaluation concluded with his opinion that the claim was worth up to $2,600. He offered to settle for $1,000 several times. Then he increased the offer, not to his own maximum evaluation but to Ms. Osborn's low-end number, $2,866. When directly asked by plaintiff's counsel whether $2,866 was American Standard's full value evaluation of the claim, he simply repeated the $2,866 offer and indicated that he would entertain a counter. After plaintiff responded with a demand for $75,000, Mr. Feliciano, on May 7, 2014, increased the offer to the amount that had been authorized in September 2012. I conclude that a jury could reasonably find that a benefit of the policy was at least American Standard's $7,986 to $8,000 internal valuation, but that American Standard's failure to offer that amount for approximately 19 months was an unreasonable delay.

Second, when the $8,000 offer was not accepted and litigation was commenced, American Standard did not tender either $7,986 or $8,000 to the plaintiff. Evidently American

Standard was unwilling to tender the amount unless it accomplished a complete and final resolution of the claim. *See, e.g.,* ECF No. 35-1 at 3 (suggesting that the offer was conditioned on a full release of plaintiff's claims including lien and subrogation claims). I conclude that a reasonable jury could find that conditioning the payment on Ms. Wahlert's relinquishment of her claim that she was entitled to more under the policy was an unreasonable delay or denial of a benefit. *Cf. Carpenter v. American Family Mutual Ins. Co.,* No. 13-cv-1986-JLK, 2015 WL 8529775, at **1, 2 (D. Colo. De. 11, 2015) (insurer calculated insured's losses at $155,000 but made a "take it or leave it" settlement offer of $150,000 and withheld payment because the insured would not sign a release and forfeit her ability to recover the full value of her underinsured motorist benefit; in a post-trial order concerning application of a damages cap and prejudgment interest, the court characterized this conduct as "callous" and a "form of extortion"). [6]

    In sum, because I find that the reasonableness of American Standard's conduct in these specific ways presents a fact dispute that a jury should resolve, I decline to dismiss the statutory bad faith claim entirely.

    Before concluding this order, however, I wish to mention plaintiff's "expert" report. This document, ECF No. 39-3, was prepared by "David M. Torres, Claim Practices Consultant." There is no indication in the report, nor did I find any indication elsewhere, of Mr. Torres'

---

[6] Judge Kane also commented on "American Family's internal policy and mission [to] pay out as little as possible to its insureds." *Id.* at *1. Similarly, in the present case plaintiff cites American Family's "Performance Pay Planning Process," under which employees are rewarded "based on job performance." ECF No. 39-1 at 1. If an insurer rewards employees based on how little they pay insureds, it can get itself in a great deal of trouble in bad faith cases and elsewhere. However, I have seen no evidence that such a policy, if it indeed is American Standard's policy, had an adverse effect on plaintiff in the present case.

qualifications.  Nor does the report provide any discussion of facts.[7]  Rather, Mr. Torres

criticizes American Family based on its handling of "similar cases," asserting that it has "a

pattern and practice of not seeking out information that would increase the value of their

insured's uninsured/underinsured claims, and not evaluating all of Colorado's damage

categories."  *Id.* at 2.  No basis is provided for this assertion.  Nor in any event is this Court

persuaded by what Mr. Torres thinks about American Family's handling of other cases.  I am

aware that American Family is a "frequent flier" in the universe of litigated insurance coverage

disputes.  But each case must be judged on its own facts, not on someone's perception that

American Family or American Standard or other related companies are bad actors in general.

As for the present case, Mr. Torres asserts that American Family (actually American

Standard) "refused to investigate all evidence offered to them to assist with the evaluation of Ms.

Wahlert's claim," despite that "Ms. Wahlert's attorneys continued to point out American Family

was not considering all elements of her claim or properly investigating facts necessary to

adequately evaluate the claim."  *Id.*  Not only does Mr. Torres provide no references to the

record to support these assertions, but my review of the record is to the contrary.  Asserting that

American Family "continues to commit/perform willful violation of C.R.S. 10-3-1104(1)(h) by

engaging in this pattern and practice of delaying or denying uninsured/underinsured motorist

claims," he characterizes this behavior as "outrageous."  *Id.* at 3.  Again, he offers no facts to

support his broad opinions.  Essentially, Mr. Torres does not present in this report as a qualified

and knowledgeable expert who has rolled up his sleeves and done his homework

---

[7] Mr. Torres refers to the document as a supplemental report.  If there was an earlier report that did include this information, I am not aware of it.

**ORDER**

Defendant's motion for partial summary judgment, ECF No. 35-1, is GRANTED IN

PART AND DENIED IN PART.  Plaintiff's Second Claim for Relief is dismissed.  Plaintiff's

Third Claim for Relief is dismissed except as it concerns the delay in offering and ultimately the

failure unconditionally to pay the $7,986-$8,000 value that American Standard internally placed

on plaintiff's claim, as discussed in this order.

DATED this 29th day of March, 2016.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge